IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

D&M HOLDINGS INC. d/b/a THE
D+M GROUP, D&M HOLDINGS U.S.
INC.,

        Plaintiffs,

   v.

SONOS, INC.,

        Defendant.

Civil Action No. 16-141-RGA

MEMORANDUM OPINION

Jack B. Blumenfeld, Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; John M. Jackson, Matthew C. Acosta, Blake T. Dietrich, Christopher J. Rourk, Robert P. Latham, JACKSON WALKER L.L.P., Dallas, TX, David Folsom, JACKSON WALKER L.L.P., Texarkana, TX; Wasif Qureshi (argued), JACKSON WALKER L.L.P., Houston, TX.

    Attorneys for Plaintiffs.

Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, DE; George I. Lee, Sean M. Sullivan, Rory P. Shea, J. Dan Smith, Michael P. Boyea, Cole B. Richter (argued), Jae Y. Park, LEE SULLIVAN SHEA & SMITH LLP, Chicago, IL.

    Attorneys for Defendant.

February 16, 2018

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court is Defendant's Motion for Summary Judgment of Invalidity of U.S. Patent No. 7,995,899 (D.I. 186) and related briefing (D.I. 190, 222, 243). The Court held oral argument on all motions for summary judgment (D.I. 177, 186, 191, 193) on January 30, 2018. (D.I. 278) ("Tr."). For the reasons that follow, the Court will grant Defendant's Motion for Summary Judgment of Invalidity of U.S. Patent No. 7,995,899. (D.I. 186).

## I. BACKGROUND

Plaintiffs filed a patent infringement action on March 7, 2016 against Defendant, alleging infringement of several patents, including U.S. Patent Nos. 7,734,850 ("the '850 patent"), 7,995,899 ("the '899 patent"), and 7,987,294 ("the '294 patent"). (D.I. 1). Plaintiffs filed an amended complaint on May 1, 2017. (D.I. 65).

Plaintiffs allege infringement of claims 1, 5, 7, 8, 10, and 26 of the '899 patent. (D.I. 190 at 2; D.I. 222 at 1). Claim 5, 7, 8, and 10 depend from claim 1. They read as follows:

1. A method of playing back a recorded signal, comprising:

    obtaining a recording identifier corresponding to the recorded signal;

    comparing the recording identifier with previously stored identifiers in a playback preference database; and

    reproducing the recorded signal using previously stored preferences if the recording identifier is found in the playback preference database and using default preferences if the recording identifier is not found in the playback preference database.

2. A method as recited in claim 1, further comprising:

    obtaining playback preferences during said reproducing; and

    storing the playback preferences in the playback preference database.

1

3. A method as recited in claim 2, wherein the playback preferences include audio control settings.

4. A method as recited in claim 3, wherein the audio control settings include programmable effects.

5. A method as recited in claim 1, further comprising obtaining the recorded signal from a compact disc.

6. A method as recited in claim 4, further comprising obtaining the recorded signal from a file of digitally encoded audio on a computer readable medium.

7. A method as recited in claim 6, wherein the file is digitally encoded using ISO-MPEG Audio Layer-3.

8. A method as recited in claim 6,

wherein the computer readable medium is a computer mass storage device, and wherein said method further comprises:

detecting changes in software available to playback the recorded signal, and

automatically downloading the software to playback the recorded signal.

10. A method as recited in claim 3, wherein the audio control settings include at least one of echo, reverberation, loudness, speed and direction.

('899 patent, claims 1, 5, 7, 8, 10, 26). Claim 26 depends from independent claim 19 and dependent claims 20-22 and 24. Plaintiffs' arguments for the patentability of claim 26 are the same as their arguments for the patentability of claims 5, 7, and 10. (D.I. 222 at 12).

## II. LEGAL STANDARD

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for

2

patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* (emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 72 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and 'as an ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* at 2357 (alterations in original) (quoting *Mayo*, 566 U.S. at 77). "[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 566 U.S. at 82. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S.

Ct. at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," which underlies the second step of the *Mayo/Alice* inquiry, "is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 2018 WL 774096, at *5 (Fed. Cir. Feb. 8, 2018). Thus, "[w]hether [the claims] perform well-understood, routine and conventional activities to a skilled artisan [can be] a genuine issue of material fact . . . ." *Id.*, at *7.

4

The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

## III. DISCUSSION

Plaintiffs allege infringement of claims 1, 5, 7, 8, 10, and 26 of the '899 patent. (D.I. 190 at 2; D.I. 222 at 1).

### A. Abstract Idea

"First, we determine whether the claims at issue are directed to [an abstract idea]." *Alice*, 134 S. Ct. at 2355. "The 'abstract ideas' category embodies 'the longstanding rule that [a]n idea of itself is not patentable.'" *Id.* (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Supreme Court has recognized, however, that "fundamental economic practice[s]," *Bilski*, 561 U.S. at 611, "method[s] of organizing human activity," *Alice*, 134 S. Ct. at 2356, and mathematical algorithms, *Benson*, 409 U.S. at 64, are abstract ideas. In navigating the parameters of such categories, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. "But in determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because '[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural

phenomena, or abstract ideas.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (alterations in original) (quoting *Alice*, 134 S. Ct. at 2354).

Defendant argues that claim 1 is "directed to the well-known practice of choosing to [play back] media (e.g., a DVD movie) with or without playback preferences (e.g., volume level, surround sound mode, viewing angle, etc.), which can be (and was previously) performed entirely by a human." (D.I. 190 at 1). Defendant notes that the claim language covers both manual and automated practices, and points to portions of the '899 patent specification, which it says "expressly disclose[] that the alleged invention was previously performed manually by a user." (*Id.* at 5). Defendant further points to portions of the specification which it says characterize "the alleged invention [as] the mere automation of a well-known manual process." (*Id.*). For example, the specification discloses that the "traditional experience of the musical recording" consists "essentially of deciding which tracks to play and performing simple transformations on the recorded sound, such as setting the volume or applying an audio equalizer." (D.I. 196-1, Exh. F at 1:24-33).[1] The specification also discloses that a benefit of the invention is that a user can play back media like a DVD with his or her preferred preferences "without requiring setting by the user each time." ('899 patent at 9:5-10). Thus, argues Defendant, the claim is directed to an abstract idea. *See Mortg. Grader, Inc. v. First Choice Loans Servs., Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (finding an abstract idea where a claim "could all be performed by humans without a computer"); *Content Extraction*, 776 F.3d at 1347 (finding an abstract idea where "humans have always performed" the claimed functions).

---

[1] This disclosure appears in U.S. Patent No. 6,154,773, which resulted from U.S. Patent App. No. 09/060,876. The '899 patent incorporates by reference U.S. Patent App. No. 09/060,876. ('899 patent, 1:10-11). The incorporated patent application is "effectively part of the ['899 patent] as if [it] were explicitly contained therein." *X2Y Attenuators, LLC v. Int'l Trade Comm'n*, 757 F.3d 1358, 1362-63 (Fed. Cir. 2014) (internal citation omitted).

Plaintiffs disagree that claim 1 is directed to an abstract idea, and assert that Defendant's "arguments mischaracterize the claimed invention." (D.I. 222 at 6).

In support of their position, Plaintiffs point to the specification's disclosure that the '899 patent is directed to methods of "control[ling] audio and video equipment and, more particularly, [using] a computer in a device having the capabilities of an audio/video receiver." ('899 patent at 1:27-29). Plaintiffs also point to the specification's description of a "graphical user interface" that is "[p]referably . . . used in performing this method of controlling audio/video equipment," as well as several exemplary "interfaces." ('899 patent at 3:2-4, Figs. 6A-6H). However, neither this "computer" nor this "graphical user interface" are part of the claim language, and Plaintiffs have failed to explain why the claim requires them. I have not done any claim construction that would make them claim limitations.

Plaintiffs argue that the claim is "limited to a specific technological field." (D.I. 222 at 8). However, that the claims are directed to a particular technological environment is irrelevant. *Alice*, 134 S. Ct. at 2358 ("the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment").

Plaintiffs also note that the specification provides "surround sound" as an example of a claimed "playback preference." (D.I. 222 at 8; '899 patent at 9:5-10). The specification provides that it "is a further object of the present invention to reproduce audio from multiple forms of recorded signals using playback preferences, including digital signal processing for surround sound effects . . . ." ('899 patent at 2:23-26). Plaintiffs note that to implement "surround sound," the "system must necessarily implement changes to multiple devices on the network such that each of the devices is designated to perform a different playback task." (D.I.

222 at 8; '899 patent, 5:4-8). Plaintiffs argue that this feature "is far more" than Defendant's proffered abstract idea of "choosing to play back media with or without playback preferences," especially given that this Court previously determined that "implementing a surround sound configuration" could not be performed manually by a human. (*Id.* at 8-9, citing *Sonos, Inc. v. D&M Holdings, Inc.*, No. 14-1330-WCB, 2017 WL 971700, at *5-6 (D. Del. Mar. 13, 2017) (D.I. 242 at 9, 11)).[2] However, "surround sound" is not part of the claims as written, and Plaintiffs have not provided a reason why the claimed "preferences" must include "surround sound."[3] But, assuming they do, the "surround sound" feature, either as a preference or a default, is for the purposes of this analysis, no different than "volume." That is, they are settings that a human can set manually.

I agree with Defendant that this claim is, at most, directed to the automation of a process that can be (and has been) performed by humans. As pointed out by Defendant, the claim could be satisfied by (1) a "human choos[ing] a particular DVD to watch by identifying its title," (2) "[u]sing his or her memory, [determining] whether he or she watched the DVD and if so, whether he or she selected any playback preferences," and (3) "[i]f the person recalls previously watching the DVD with playback preferences, [selecting] the same playback preferences as before and [beginning to watch] the DVD," and "if the person does not remember previously watching the DVD and/or selecting playback preferences, [beginning to watch] the DVD with default preferences." (D.I. 190 at 6).

---

[2] The claims under consideration in *Sonos v. D&M* were considerably less abstract than the claims I am now considering, as the analysis in D.I. 242 makes clear.

[3] Plaintiffs state that "previously stored preferences" has its plain and ordinary meaning. (D.I. 280 at 18).

8

Plaintiffs seek to distinguish *Content Extraction*, a case cited by Defendant, where the Federal Circuit found claims directed to the abstract idea of (1) "collecting data," (2) "recognizing certain data within the collected data set," and (3) "storing that recognized data in a memory." 776 F.3d at 1347. Plaintiffs argue that the technology in that case "was directed to the well-known, fundamental practice of scanning and storing information from a physical form into a digital storage device or memory," whereas the '899 patent claims "describe specific methods . . . ." (D.I. 222 at 9). I am unpersuaded by this distinction. Rather, the elements of the abstract idea in *Content Extraction* correspond respectively to claim 1's elements of (1) obtaining a recording identifier, (2) comparing the recording identifier with previously stored identifiers, and (3) storing the playback preferences in the playback preference database. Claim 1 includes the additional element of reproducing the recorded signal with either the previously stored or default preferences, but that element is similarly abstract, as it, too, is at most directed to the automation of a process that can be performed by humans.

Claim 1 is thus directed to the abstract idea of choosing to play back media with or without playback preferences.[4] ('899 patent, claim 1). It is not directed to an invention that improves this process. *Enfish*, 822 F.3d at 1336 (finding that the claims at issue were not directed to an abstract idea because "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity").

---

[4] I would characterize the abstract idea as "playing a recording according to one's tastes," which I think is a more easily understandable way of saying it.

Plaintiffs do not agree that claim 1 is representative of the other asserted claims. (D.I. 222 at 5, 11-13). Rather, Plaintiffs point to additional reasons they argue demonstrate that the dependent claims are not abstract.

Asserted claims 5, 7, and 10, "define alternate sources of recorded signals," and "define alternate types of playback preferences," including "audio control settings" and "programmable effects." (D.I. 190 at 9; D.I. 222 at 12). Plaintiffs argue that like claim 1, these claims "could not be performed manually by a human," are "narrowly-tailored to the specific audio/visual technology field," and "constitute[] a substantial improvement in the underlying functionality of the audio/visual equipment by improving the quality of audio reproduction and audio characteristics as enjoyed by the user." (D.I. 222 at 12). As to Plaintiff's first argument, playing back these recorded signals and setting these playback preferences, as with claim 1, can be performed by humans, and these claims are, at most, directed to automation of a once-manual procedure—playing back recorded signals, albeit with specified alternate sources of recorded signals and types of playback preferences. As to Plaintiff's second argument, recitations of a specific technology field cannot save the claims. *Alice*, 134 S. Ct. at 2358. Plaintiffs' argument that the dependent claims "constitute[] a substantial improvement in the underlying functionality of the audio/visual equipment by improving the quality of audio reproduction and audio characteristics" likewise does not save the claims from abstraction, because each dependent claim merely recites generic or well-known computer technology to describe alternate sources of recorded signals and types of playback preferences. ('899 patent at 1:31-37, 1:57-63, 2:57-65, 3:58-60).

With respect to claims 8 and 26, which contain the limitations of "detecting changes in software available to playback the recorded signal" and "automatically downloading the software

to playback the recorded signal," Plaintiffs argue that "the underlying software updates allow the various hardware to operate in a more efficient manner . . . ." (D.I. 222 at 13). However, Plaintiffs make no arguments as to how these software updates amount to an "improvement to computer functionality," or anything other than automation of a once-manual method with generic computer functions. *Enfish*, 822 F.3d at 1336. Rather, Plaintiffs generically recite the proposition that software "*can* make non-abstract improvements to computer technology." (D.I. 222 at 13, citing *Enfish*, 822 F.3d at 1335). As claimed, the software merely "play[s] back a recorded signal." This is automation of a previously manual step.

Accordingly, each asserted dependent claim is also directed to an abstract idea.

## B. Inventive Concept

The determination that a patent is directed to an abstract idea "does not render the subject matter ineligible." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Having decided that the patent's claims are directed to an abstract idea, the Court must next "determine whether the claims do significantly more than simply describe the abstract method." *Ultramercial*, 772 F.3d at 715. Since "a known idea, or one that is routine and conventional, is not inventive in patent terms," this analysis "favors inquiries analogous to those undertaken for determination of patentable invention." *Internet Patents*, 790 F.3d at 1346. Indeed, the Federal Circuit has noted that the two stages of the *Alice* two-step inquiry "are plainly related" and "involve overlapping scrutiny of the content of the claims . . . ." *Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Furthermore, neither "[a] simple instruction to apply an abstract idea on a computer," nor "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" satisfies the requirement of an

11

"inventive concept." *Intellectual Ventures I, LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

Defendant argues that claim 1 does not provide an inventive concept, and that it at most "merely automate[s] the abstract idea through the use of a generic, conventional technology." (D.I. 190 at 7; *Alice*, 134 S. Ct. at 2350-60; *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (finding no inventive concept where claims "describe the automation of the fundamental economic concept . . . through the use of generic-computer functions")).

Plaintiffs point to the aforementioned "user interface" as evidence of an inventive concept. (D.I. 222 at 10). Plaintiffs also point to the specification to demonstrate that the patent "plainly discloses and claims . . . specific advancements unique to and necessarily rooted in computerized (audio/visual) technology which are . . . predicated on 'sophisticated computer programming.'" (D.I. 222 at 10; D.I. 287 at 2; '899 patent at 1:27-29, 2:18-19). Plaintiffs point to no claim language in response to Defendant's assertion that claim 1 at most "merely automate[s] the abstract idea through the use of a generic, conventional technology."[5]

Claim 1 does not cover a "user interface," and Plaintiffs do not explain why the claim requires an implementation with this "user interface." Likewise, the claim language does not demonstrate a need for or claim "sophisticated computer programming."

I agree with Defendant that claim 1 provides no inventive concept, and at most "merely automate[s] the abstract idea through the use of a generic, conventional technology." As a result,

---

[5] Plaintiffs also argue that the machine-or-transformation test demonstrates that claim 1 is patent eligible, and that claim 1 does not preempt "any process or method applying the allegedly abstract concept." (D.I. 222 at 10-11). Indeed, unless "playback preference database" is limited to computer databases, claim 1 does not actually claim an automated method. It preempts both manual and computer-implemented methods of choosing to play back media with or without playback preferences. The claim is also not tied to a novel machine, and it does not transform an article.

the claim does not provide an inventive concept. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338-39 (Fed. Cir. 2017) ("The main problem that [the plaintiff] cannot overcome is that the claim—as opposed to something purportedly described in the specification—is missing the inventive concept."); *Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 F. App'x 950, 954–55 (Fed. Cir. 2017) (holding claim ineligible where it recited an "unknown and unclaimed process" to allegedly transform data); *Internet Patents*, 790 F.3d at 1348 (holding that a claim directed to the abstract idea of "retaining information in the navigation of online forms" did not supply an inventive concept because the claim "contain[ed] no restriction on how the result is accomplished[, that is, t]he mechanism for maintaining the state [of data on a web page] is not described, although this is stated to be the essential innovation").

Dependent claims 5, 7, and 10 are directed to automation of a once-manual procedure—playing back recorded signals with alternate, and known, types of playback preferences and sources of recorded signals. Similarly, claims 8 and 26 are directed to automation of a once-manual method. None of the claims' added limitations provide functions that play back the recorded signal in a different way than the manual method, or improve the computer as a tool. Accordingly, none of the asserted dependent claims provides any more of an inventive concept than claim 1. *Alice*, 134 S. Ct. at 2359; *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("Our prior cases have made clear that mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology.").

Plaintiffs argue that there is a "genuine issue of material fact as to whether playback using preferences based on a recording identifier corresponding to a recorded signal was a well-

"inventive concept." *Intellectual Ventures I, LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

Defendant argues that claim 1 does not provide an inventive concept, and that it at most "merely automate[s] the abstract idea through the use of a generic, conventional technology." (D.I. 190 at 7; *Alice*, 134 S. Ct. at 2350-60; *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (finding no inventive concept where claims "describe the automation of the fundamental economic concept . . . through the use of generic-computer functions")).

Plaintiffs point to the aforementioned "user interface" as evidence of an inventive concept. (D.I. 222 at 10). Plaintiffs also point to the specification to demonstrate that the patent "plainly discloses and claims . . . specific advancements unique to and necessarily rooted in computerized (audio/visual) technology which are . . . predicated on 'sophisticated computer programming.'" (D.I. 222 at 10; D.I. 287 at 2; '899 patent at 1:27-29, 2:18-19). Plaintiffs point to no claim language in response to Defendant's assertion that claim 1 at most "merely automate[s] the abstract idea through the use of a generic, conventional technology."[5]

Claim 1 does not cover a "user interface," and Plaintiffs do not explain why the claim requires an implementation with this "user interface." Likewise, the claim language does not demonstrate a need for or claim "sophisticated computer programming."

I agree with Defendant that claim 1 provides no inventive concept, and at most "merely automate[s] the abstract idea through the use of a generic, conventional technology." As a result,

---

[5] Plaintiffs also argue that the machine-or-transformation test demonstrates that claim 1 is patent eligible, and that claim 1 does not preempt "any process or method applying the allegedly abstract concept." (D.I. 222 at 10-11). Indeed, unless "playback preference database" is limited to computer databases, claim 1 does not actually claim an automated method. It preempts both manual and computer-implemented methods of choosing to play back media with or without playback preferences. The claim is also not tied to a novel machine, and it does not transform an article.

12

the claim does not provide an inventive concept. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338-39 (Fed. Cir. 2017) ("The main problem that [the plaintiff] cannot overcome is that the claim—as opposed to something purportedly described in the specification—is missing the inventive concept."); *Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 F. App'x 950, 954–55 (Fed. Cir. 2017) (holding claim ineligible where it recited an "unknown and unclaimed process" to allegedly transform data); *Internet Patents*, 790 F.3d at 1348 (holding that a claim directed to the abstract idea of "retaining information in the navigation of online forms" did not supply an inventive concept because the claim "contain[ed] no restriction on how the result is accomplished[, that is, t]he mechanism for maintaining the state [of data on a web page] is not described, although this is stated to be the essential innovation").

Dependent claims 5, 7, and 10 are directed to automation of a once-manual procedure—playing back recorded signals with alternate, and known, types of playback preferences and sources of recorded signals. Similarly, claims 8 and 26 are directed to automation of a once-manual method. None of the claims' added limitations provide functions that play back the recorded signal in a different way than the manual method, or improve the computer as a tool. Accordingly, none of the asserted dependent claims provides any more of an inventive concept than claim 1. *Alice*, 134 S. Ct. at 2359; *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("Our prior cases have made clear that mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology.").

Plaintiffs argue that there is a "genuine issue of material fact as to whether playback using preferences based on a recording identifier corresponding to a recorded signal was a well-

understood, routine, and conventional activity." (D.I. 287 at 2). I disagree. In *Berkheimer*, the Federal Circuit found a genuine dispute of material fact as to whether a claim element was well-understood, routine, and conventional only where the claims "capture[d] the purportedly inventive concepts." *Berkheimer*, 2018 WL 774096, at *7. Here, none of the independent or dependent claim language captures the "sophisticated computer programming" or the "user interface" that Plaintiffs argue provide inventive concepts that were not well-understood, routine, or conventional. (D.I. 222 at 10; D.I. 287 at 2). Accordingly, there is no genuine dispute of material fact as to "whether a claim element or combination of elements is well-understood, routine and conventional." *Berkheimer*, 2017 WL 774096, at *5.

For the reasons given above, I find that claims 1, 5, 7, 8, 10, and 26 of '899 patent are drawn to an abstract idea, and do not provide an inventive concept. Therefore, the claims are invalid under 35 U.S.C. § 101, and I will grant Defendant's Motion for Summary Judgment of Invalidity of U.S. Patent No. 7,995,899. (D.I. 186). I need not reach Defendant's argument that the asserted claims of the '899 patent are invalid as anticipated under § 102. (D.I. 190 at 11). I previously denied Defendant's argument that any of the asserted claims is obvious under § 103. (D.I. 269 at 2).

## IV. CONCLUSION

Defendant's Motion for Summary Judgment of Invalidity of U.S. Patent No. 7,995,899 (D.I. 186) is granted, and U.S. Patent No. 7,995,899 is declared invalid for lack of patent eligible subject matter.

A separate order will be entered.

14