**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| D&M HOLDINGS INC. d/b/a THE D+M GROUP and D&M HOLDINGS U.S. INC, | § § § § | |
| Plaintiffs, | § § | C.A. No. 16-141 (RGA) |
| v. | § § | **JURY TRIAL DEMANDED** |
| SONOS, INC. | § § | |
| Defendant. | § | |

**PROPOSED JURY INSTRUCTIONS**[1]

---

[1] Disputed instructions are noted throughout, including the party the proposed the instruction.

# TABLE OF CONTENTS

## PRELIMINARY INSTRUCTIONS

Members of the Jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

## I.   SUMMARY OF THE PARTIES AND THEIR CONTENTIONS

You may recall that during the process that led to your selection as jurors, I advised you that this is a civil action for patent infringement arising under the patent laws of the United States. The parties in this case are the plaintiffs, D&M Holdings Inc. d/b/a The D+M Group and D&M Holdings U.S. Inc., which I will refer to collectively as "Denon" or just "Plaintiffs," and the defendant, Sonos, Inc., which I will refer to as "Sonos" or simply "Defendant."

**[DENON PROPOSED INSTRUCTION]**

This case involves a dispute relating to two United States patents owned by Denon. Before further summarizing the positions of the parties and the issues involved in the dispute, I'd like to take a moment now to explain what a patent is and how one is obtained.

### A.    WHAT A PATENT IS AND HOW ONE IS OBTAINED

Patents are granted by the United States Patent and Trademark Office (sometimes called "the USPTO" or just "PTO"). A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission until expiration of the patent. A violation of the patent holder's rights is called an infringement. The patent holder is entitled to enforce a patent against anyone believed to be an infringer by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs specially trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention explaining what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

More specifically, a claim is a single sentence that sets forth, in words, a set of requirements.  If a device or a process satisfies each requirement of a claim, then that device or process is said to be covered by and therefore infringes that claim.  This infringement is the violation of the patent holder's rights I referred to earlier.

1

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable. This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. Sometimes, patents are issued after appeals within the PTO or to a court. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history" or the "file history."

Once a patent is issued by the PTO, it is presumed to be valid. However, the fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you.  Thus, a person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.  It is your job to consider the evidence presented by the parties and determine independently whether or not Sonos has proven that the patent is invalid.

### B.    SUMMARY OF CONTENTIONS

As I mentioned earlier, this case involves two United States patents owned by Denon.

**[DENON PROPOSED INSTRUCTION: Generally, these patents are directed to Denon's inventions for audio playback technology and the technology for controlling audio playback.]**

These two patents are

- U.S. Pat. No. 7,987,294.

- U.S. Pat. No. 7,734,850.

For your convenience, the parties and I will often refer to these patent numbers by the last three numbers of the overall patent number. For example, I may simply say "the '294 Patent" instead of "U.S. Patent No. 7,987,294." When referring to both patents, the parties and I will often refer to them as the Asserted Patents.

Denon filed suit in this court seeking money damages from Sonos for allegedly infringing the Asserted Patents by making, using, selling, offering for sale, and importing into the United States products and processes that Denon argues are covered by claims of the Asserted Patents. Denon also argues that Sonos has actively induced infringement of claims of the Asserted Patents by others and contributed to the infringement of claims of the Asserted Patents by others.

The products alleged to infringe are referred to as the "Sonos" product line.  These Product line includes Sonos's audio players and Sonos's controller apps installed on devices.  The parties and I may refer to these products and this product line collectively as the "Accused Products."

Sonos denies that it has infringed claims of the Asserted Patents. Sonos also argues that the Asserted Patents are invalid. I will instruct you later as to the ways in which a patent may be proven invalid. In general, however, a patent is invalid if it is proven to be not new or it is proven to be

obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.

**[DENON PROPOSED INSTRUCTION]**

*[The Court should show the jury the patent at issue and point out the parts, which include the specification, drawings, and claims, including the claims at issue.*

*The Court may wish to hand out its claim constructions (if the claims have been construed at this point) and the glossary at this time. If the claim constructions are handed out, the following instruction should be read:]*

Your job will be to decide whether or not Sonos infringes claims of the Asserted Patents and whether or not those claims are invalid. I have already determined the meaning of some of the claim terms of the Asserted Patents. **[DENON PROPOSED INSTRUCTION:  You have been given a document reflecting those meanings.]** **[SONOS PROPOSED INSTRUCTION: At the end of the case, you  will be given a document reflecting those meanings.]** For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning. You are to apply my definitions of these terms throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

If you decide that Sonos has infringed any claim of the Asserted Patents that is not invalid, you will then need to decide the money damages to be awarded to Denon to compensate it for the infringement. You will also need to make a finding as to whether any infringement was willful.

## II.    OVERVIEW OF APPLICABLE LAW

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now, but we will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Sonos has infringed any claims of the Asserted Patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. There are a few different ways that a patent may be infringed. I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case.

In general, however, Sonos may directly infringe a Denon Patent by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product or by using a process meeting all the requirements of a claim of a Denon Patent.[**DENON PROPOSED INSTRUCTION: For some of Denon's contentions of infringement, it is not necessary to prove that anyone used the accused devices or systems to actually perform the claimed functions. Rather, the Accused Products infringe when they are made, sold, offered for sale, or imported into the United States with software pre-installed that enables an end user to utilize the recited claim functions.**]

Sonos may also indirectly infringe a Denon Patent by contributing to infringement by another person or entity, or by inducing another person or entity to infringe. I will provide you with more detailed instructions on the requirements for each of these types of infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the Asserted Patents are invalid. A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious, as of the invention date of the patent, or because the claims are indefinite,

meaning that they do not, with reasonable certainty, inform a person skilled in the art about the scope of the invention. I will provide you detailed instruction on the issues of indefiniteness at the conclusion of the case.

**[SONOS PROPOSED INSTRUCTION]**

For a claim to be invalid because it is not new, Sonos bears the burden of showing that all of the elements of a claim are present in a single previous device, system, or method, or sufficiently described in a single previous printed publication or patent. We call these "prior art."  If a claim is not new, it is said to be "anticipated."

Another way that a claim may be invalid is that it may have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.

Yet another way a claim may be invalid is that it is indefinite.  I will provide you more instructions on how to determine whether a claim is invalid for being indefinite at the conclusion of the case.  But for now you should know that a claim is indefinite when it does not, with reasonable certainty, inform a person skilled in the art about the scope of the invention.

If you decide that any claim of the Asserted Patents has been infringed and is not invalid, you will then need to decide the money damages to be awarded to Denon to compensate it for the infringement. A damages award should put Denon in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Denon would have received had it been paid a reasonable royalty.  I will instruct you later on the meaning of a reasonable royalty.  The damages you award are meant to compensate Denon for Sonos's infringement. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

### III.    DUTIES OF THE JURY

I'd like to now explain some general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not.

Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

## IV.    EVIDENCE

The evidence from which you will find the facts will consist, in part, of the testimony of witnesses. The testimony of witnesses consists of the answers of the witnesses to questions posed by the attorneys or the court; you may not ask the witnesses questions. Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1.       Statements, arguments, and questions by lawyers are not evidence.

2.       Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction. If this occurs during the trial, I will try to clarify this for you at that time.

3.       Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.       Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is evidence that does not require an inference, such as the testimony of an eyewitness, which, if you believe it, directly proves a fact. If a witness testified that he or she saw it raining outside, and you believed him or her, that would be direct evidence that it was raining.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet hat -- that would be circumstantial evidence from which you could conclude that it was raining.

As a general rule, the law makes no distinction between these two types of evidence, nor does it say that one is any better evidence than the other.  Rather, the law simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

## V.      CREDIBILITY OF WITNESSES – WEIGHING CONFLICTING TESTIMONY

During trial, you will hear testimony from witnesses.  You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

## VI.    DEPOSITION TESTIMONY

You may hear witnesses testify through deposition testimony. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers. The deposition may also be recorded on videotape. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present here in court to testify.

## VII.   EXPERT WITNESSES

You will also hear testimony from expert witnesses. When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he or she is called an "expert witness"—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

## VIII.   DEMONSTRATIVE EXHIBITS

Certain demonstrative exhibits, such as models, diagrams, devices, sketches, etc., may be shown to you.  Those demonstratives are used for convenience and to help explain the facts of the case. Unless admitted into evidence, they are not themselves evidence or proof of any facts.

## IX. SUMMARY OF THE PATENT ISSUES YOU MUST DECIDE

In this case, you must decide several things according to the instructions that I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail.

You must decide the following four issues, each of which must be decided separately:

1. Whether Denon has proven, by a preponderance of the evidence, that Sonos has infringed any of the Asserted Claims of the Asserted Patents.

2. Whether Denon has proven, by a preponderance of the evidence, that any infringement was willful.

3. The amount of damages that Denon has proven by a preponderance of the evidence.

4. **[SONOS REQUESTS THAT THIS INSTRUCTION BE PLACED SECOND, FOLLOWING INFRINGEMENT, IN THIS LIST OF ISSUES]** Whether Sonos has proven, by clear and convincing evidence, that any claim of the Patents are invalid.

Your decision will be recorded in a "special verdict" form that I will provide you at the end of trial.

**[DENON PROPOSED INSTRUCTION: I will instruct you later on the meaning of the standards of proof that I just mentioned –"preponderance of the evidence" and "clear and convincing evidence" – but for now, you should keep in mind that "clear and convincing evidence" is a higher burden of proof than "preponderance of the evidence."]** **[SONOS PROPOSED INSTRUCTION: I will instruct you later on the meaning of the standards of proof that I just mentioned –"preponderance of the evidence" and "clear and convincing evidence."]**

## X.      CONDUCT OF THE JURY

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about it, bring it to the court's attention promptly. There are good reasons for this ban on discussions. The most important is the need for you to keep an open mind throughout the presentation of the evidence.

Second, do not read or listen to anything touching on this case in any way. By that I mean, if there may be a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case, including using the Internet.

I know that many of you use cell phones, smart phones, tablets, and other portable electronic devices, as well as laptops, netbooks, and other computers. You must not talk to anyone at any time about this case or otherwise use these or other electronic devices to communicate with anyone about the case or, as I noted, get information about the case, the parties or any of the witnesses or lawyers involved in the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, text messaging, Facebook, Snapchat, Twitter, Instagram, or through any blog or website. You may not use any similar technology or social media to get information about this case, even if I have not specifically mentioned it here.

10

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

During the trial, you may, but are not required to, take notes regarding testimony; for example, exhibit numbers, impression of witnesses or other things related to the proceedings. A word of caution is in order. Your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence,and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Also, keep in mind that you will not have a transcript of the testimony to review. So, above all, your memory will be your greatest asset when it comes time to deliberate and render a decision in this case.

If you do take notes, you must leave them in the jury deliberation room which is secured at the end of each day. And, remember that they are for your own personal use.

## XI.   OUTLINE OF TRIAL

The trial will now begin.  First, each side will make an opening statement.  An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

Second, the parties will present evidence.  There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not.  [**DENON PROPOSED INSTRUCTION:  That is, the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor.**]  Other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence.  [**DENON PROPOSED INSTRUCTION:  That is, that you have been left with a clear conviction that the fact has been proven.**]

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, Denon will present its evidence in support of its contention that claims of the Asserted Patents have been and continue to be infringed by Sonos and that this infringement has been and continues to be willful. To prove infringement of any claim, Denon must persuade you that it is more likely than not that Sonos has infringed that claim. To persuade

you that any infringement was willful, Denon must also prove that it is more likely than not that any infringement was willful.

Sonos will then present their evidence that the claims of the Asserted Patents are invalid. To prove invalidity of any claim, Sonos must persuade you by clear and convincing evidence that the claim is invalid. Sonos will also present evidence that it did not infringe the Asserted Patents and, even if they did, that such infringement was not willful.

Denon may then present additional evidence responding to Sonos's evidence that the claims of the Asserted Patents are invalid. This is referred to as "rebuttal" evidence. Denon's "rebuttal" evidence may respond to any evidence offered by Sonos.

[**SONOS PROPOSED INSTRUCTION:   Finally, Sonos may have the option to present its "rebuttal" evidence to support its contentions as to the validity of the Asserted Patents by responding to any evidence offered by Denon on that issue.**]

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case.

**FINAL INSTRUCTIONS**

# I.     GENERAL INSTRUCTIONS

## A.     INTRODUCTION

Ladies and gentlemen of the jury, you have heard the evidence and arguments in this case and the time has come for you to weigh the evidence, deliberate, and reach a verdict.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. I will then explain the positions of the parties and the law you will apply in this case. Last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Each of you has been provided a copy of these instructions. If you prefer, you may read along as I deliver them; however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at any time, if necessary.

Please listen very carefully to everything I say. Some of these instructions are similar to those I read at the beginning of trial.  But it may be helpful to hear them again as a refresher.

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them from the evidence in the case. You are not to single out one instruction alone as stating the law but must consider the instructions as a whole. You should not be concerned with the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be - or ought to be - it would violate your sworn duty to base a verdict upon any view of the law other than that which I give you.

Again, you will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

### B.      ROLE OF THE JURY

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You pass upon the evidence. You determine the credibility of the witnesses. You resolve any conflicts in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented. I will instruct you about the burdens of proof shortly. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way. I know that you will do this and reach a just and true verdict.

### C.    BURDENS OF PROOF

Denon has the burden of proving patent infringement by what is called a "preponderance of the evidence." That means Denon has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Denon claims is more likely true than not. [**DENON PROPOSED INSTRUCTION:  To put it differently, if you were to put Denon's and Sonos's evidence on the opposite sides of a scale, the evidence supporting Denon's claims would have to make the scales tip, even ever so slightly, on Denon's side.**]

In this case, Sonos contends that the Asserted Patents are invalid. Sonos has the burden of proving invalidity by "clear and convincing evidence." Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence. [**DENON PROPOSED INSTRUCTION: That is, clear and convincing evidence requires a fact be proven to a higher degree of certainty, than preponderance of the evidence requires.**]

### D.     EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions to the witnesses and their objections are not evidence. My legal rulings are not evidence. None of my comments or questions are evidence.

During the trial, I may not have let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

You may have seen demonstrative exhibits during the trial. These are exhibits that the lawyers or the witnesses have prepared to help you understand particular testimony. While you may consider these exhibits as part of the testimony, they are not evidence unless I specifically admit them into evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen. Make your decision based only on the evidence, as I have defined it here, and nothing else.

### E.      STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

## F.    USE OF NOTES

Any notes that you may have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.

Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

## G.    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## H.      DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two kinds of evidence: direct and circumstantial.

Direct evidence is evidence that does not require an inference, such as the testimony of an eyewitness, which, if you believe it, directly proves a fact. If a witness testified that he or she saw it raining outside, and you believed him or her, that would be direct evidence that it was raining.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet hat -- that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. As a general rule, the law makes no distinction between these two types of evidence, nor does it say that one is any better evidence than the other. The law simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## I.       CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You must decide whether the testimony of each witness is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness' intelligence;

- the manner or demeanor of the witness while testifying; and

- the reasonableness of the witness' testimony in light of all the evidence in the case.

### J.   EXPERT WITNESSES

In this case, I have permitted witnesses retained by the parties to testify to their opinions on matters about which they have special knowledge, skill, experience and training.  These persons are called "expert witnesses."

In weighing this opinion testimony, you may consider the witness' qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.

### K.      DEPOSITIONS

Some of the testimony before you is in the form of depositions that have been received in evidence. A deposition is simply a procedure where the attorneys for one side may question a witness or an adverse party under oath and the deposition is recorded by a court reporter. This is part of the pretrial discovery, and each side is entitled to take depositions. Depositions may be used at trial for a number of reasons, including because the particular witness could not be available live. You should consider the deposition testimony of a witness according to the same standards you would use to evaluate the testimony of a live witness at trial.  You should not accord live testimony higher weight than deposition testimony.

## L.    LAWYER INTERVIEWING WITNESS

It is proper for a lawyer to meet with any witness in preparation for trial.

### M.    NUMBER OF WITNESSES

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number of witnesses. You need not accept the testimony of the larger number of witnesses.

### N.        CHARTS AND SUMMARIES

Certain charts and summaries have been received into evidence to illustrate information introduced at trial.  These charts and summaries are only as probative as the underlying evidence that supports them.  You should give them only such weight as you think the underlying evidence deserves.

However, certain charts and summaries were not admitted in evidence but were shown to you during the trial to help explain the contents of evidence in the case.  If they were not admitted, they are not themselves evidence or proof of any facts.  If you find that they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

### O.    DEMONSTRATIVE EXHIBITS

Certain demonstrative exhibits, such as models, diagrams, devices, sketches, etc., may have

be shown to you.  Those demonstratives are used for convenience and to help explain the facts of

the case. Unless admitted into evidence, they are not themselves evidence or proof of any facts.

**P.     ABSENCE OF EVIDENCE**

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial.  Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

## II.      THE PARTIES AND THEIR CONTENTIONS

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.

I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

## A.     SUMMARY OF ISSUES

I will now summarize the issues that you must decide and provide instructions to guide your deliberations.

As I previously told you, Denon alleges that Sonos's audio players and Sonos's controller apps installed on devices, and uses thereof, infringe certain claims of two Asserted Patents, and that such infringement was willful.  These Asserted Patents are:

- U.S. Pat. No. 7,987,294; and
- U.S. Pat. No. 7,734,850.

Sonos denies that it has infringed any claims of the Asserted Patents. Sonos also argues that the Asserted Patents are invalid.

You must decide the following four issues, each of which must be decided separately:

1.     Whether Denon has proven, by a preponderance of the evidence, that Sonos has infringed any of the Asserted Claims of the Asserted Patents.

2.     Whether Denon has proven, by a preponderance of the evidence, that any infringement was willful.

3.     The amount of damages that Denon has proven by a preponderance of the evidence.

4.     **[SONOS PROPOSES THAT THIS INSTRUCTION BE INCLUDED SECOND ON THIS LIST OF ISSUES, AFTER THE INFRINGEMENT ISSUE]** Whether Sonos has proven, by clear and convincing evidence, that any claims of the

Your decision will be recorded in a "special verdict" form that I will provide you shortly.

## III.     CLAIM CONSTRUCTION

### A.     THE ROLE OF THE CLAIMS OF A PATENT

Before you can decide the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers and whether there is infringement.

The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims. I am providing them to you in a document labeled "Claim Constructions."  You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

## B.    HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a process satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a device or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a device or process where each of the claim elements or limitations is present in that device or process.

Sometimes the words in a patent claim are difficult to understand, which is why I have defined certain specific terms in the claims.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a device or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

### 1.    "Comprising"

The beginning portion, or preamble, of many of the claims in the Asserted Patents uses the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to products having only the claimed elements or

methods having only the steps that are recited in the claim, but also covers products with extra features and methods that add additional steps.[2]

Thus, there can be infringement of a claim containing "comprising" language even if the Accused Product or method contains additional features or steps beyond those claimed in the patent, so long as each of the claimed elements is present.

### 2.    "Configured to"

Some of the claims in the Asserted Patents contain claim elements that use the phrase "configured to" followed by a recitation of a function.  Depending on the context, "configured to" typically means "capable of performing," "programmed to perform," or otherwise "designed to perform" the recited function.

Thus, those claim elements that contain the phrase "configured to" followed by a recitation of a function can be met by a device, even if the device does not actually perform the recited function, so long as the device is "capable of performing," "programmed to perform," or otherwise "designed to perform" the recited function.

.

---

[2] For "comprising," see, e.g., *Cook Biotech Inc. v. ACell, Inc.*, 460 F.3d 1365, 1373-78 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' in a method claim . . . is open-ended and allows for additional steps."); for "consisting of," see, e.g., *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358-61 (Fed. Cir. 2006); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1383 (Fed. Cir. 2000) ("In simple terms, a drafter uses the phrase 'consisting of' to mean 'I claim what follows and nothing else.'"); for "consisting essentially of," see, e.g., *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1239 (Fed. Cir. 2003) ("consisting essentially of" is a middle ground between open-ended term "comprising" and closed-ended phrase "consisting of").

### 3.     Independent and Dependent Claims

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A "dependent claim" does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) on which it depends. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) on which it depends. A device or process that meets all of the requirements of both the dependent claim and the claim(s) on which it depends is covered by that dependent claim.

## C.      CLAIM INTERPRETATION

It is my job to determine what the patent claim terms mean and to instruct you about that meaning.  You must accept the meanings I give you and use them when you decide whether or not any claim is infringed, and whether or not any claim is invalid. I have provided you with certain definitions of claim terms which are in your jury binders.

For any words in the claim for which I have not provided you with a definition, you should apply their plain and ordinary meaning. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.[3]

---

[3] *Markman v. Westview Instruments, Inc*., 517 U.S. 370 (1996) (claim construction of a patent, including claim terms, is exclusively within the province of the court*); O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1360-63 (Fed. Cir. 2008) (remanding to the district court to determine the construction of "only if" when the "ordinary" meaning did not resolve the parties' dispute); *Phillips v. AWH Corp*., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) ("ordinary and customary meaning" is based on the understanding of a person of ordinary skill in the art in question at the time of the invention); *Pitney Bowes, Inc. v. Hewlett-Packard Co*., 182 F.3d 1298, 1304 (Fed. Cir. 1999) (claim construction is a question of law reviewed de novo); *Cybor Corp. v. FAS Techs*., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (same); *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 977 (Fed. Cir. 1995) (in jury cases, court has obligation to construe claim terms).

## IV.    INFRINGEMENT

### A.    GENERALLY

I will now instruct you how to decide whether or not Sonos has infringed the Asserted

Patents.

Patent law in the United States gives the owner of a U.S. patent the right to exclude others

from making, using, offering to sell, or selling the patented invention within the United States, or

importing into the United States the patented invention, during the term of the patent. Any person

or entity that has engaged in even a single instance of any of those acts without the patent owner's

permission infringes the patent.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement

as to one claim but no infringement as to another. Infringement can be direct or indirect. I will

explain the types of direct infringement and the types of indirect infringement in just a moment.

In this case, Denon has alleged that Sonos directly infringes the Asserted Patents. Denon

has also alleged that Sonos has indirectly infringed the claims.

In order to prove infringement, Denon must prove that the requirements for one or more of

these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely

than not that all of the requirements of one or more of each of these types of infringement have

been proved.[4]

---

[4] *Warner-Lambert Co. v. Teva Pharms. USA, Inc*., 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005)
(infringement must be proven by a preponderance of the evidence); *Seal-Flex, Inc. v. Athletic
Track & Court Constr*., 172 F.3d 836, 842 (Fed. Cir. 1999) (a patentee must "prove that the
Accused Product or process contains, either literally or under the doctrine of equivalents, every
limitation of the properly construed claim"); *Morton Int'l, Inc. v. Cardinal Chem. Co*., 5 F.3d
1464, 1468-69 (Fed. Cir. 1993) (upholding lower court's finding of noninfringement based on
plaintiff's failure to prove that the Accused Product met all of the claimed requirements).

You must determine, separately for each Asserted Claim, whether or not there is infringement. There is one exception to this rule. If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the accused device meets additional requirements of any claims that depend from the independent claim, thus, whether those claims have also been infringed. As I explained just a moment ago, a dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

I will now explain each of these types of infringement in more detail.

## B.   DIRECT INFRINGEMENT

In order to prove direct infringement, Denon must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Sonos made, used, sold, or offered for sale within the United States, or imported into the United States, a product that satisfies all of the requirements of a claim and does so without the permission of Denon during the time the Asserted Patents were in force. You must compare the Accused Products with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.[5]

Direct infringement does not require proof of intent.  In other words, someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent.

[**SONOS PROPOSED INSTRUCTION:  However, when performing this comparison, you should be careful not to compare the Accused Products with Denon's products or the descriptions in the Asserted Patents.  Only a comparison between the Accused Products and the claims of the Asserted Patents is relevant to the question of whether Sonos has infringed the Asserted Patents.[6]**]

---

[5] *Kim v. ConAgra Foods, Inc*., 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006) (dependent claims not infringed when independent claim not infringed); *MicroStrategy Inc. v. Bus. Objects, S.A*., 429 F.3d 1344, 1352-53 (Fed. Cir. 2005) (no literal infringement where Accused Product did not contain every element of the claim); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1309-11 (Fed. Cir. 2005) (no direct infringement where Accused Product did not include each claim limitation); *Network, LLC v. Centraal Corp*., 242 F.3d 1347, 1353-54 (Fed. Cir. 2001) (no literal infringement where all of the elements of the claim not present in the accused system); *Moleculon Research Corp. v. CBS, Inc*., 793 F.2d 1261 (Fed. Cir. 1986) (affirming finding of direct infringement based on circumstantial evidence).

[6] *See, e.g., Star Tech. Grp., Inc. v. Testerion, Inc.*, 215 F.3d 1351 (Fed. Cir. 1999) ("Testerion fails to make any substantive argument to support a finding of literal infringement. Its arguments consist of conclusory statements and a comparison of the accused device to Figure 3 of the patent. It is fundamental that infringement is determined by comparing the accused device to the claims, rather than comparing the accused device to the figures of the patent specification."); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481–82 (Fed. Cir. 1984) ("Infringement is not determined by comparison between parts of the description in a patent and the accused process or product, or by comparison between commercial products sold by the parties. Accused

There are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."

---

products made, sold, or used, and accused processes performed, before suit must be compared with the claims"); Abbott Labs. v. TorPharm, Inc., 309 F. Supp. 2d 1043, 1053 (N.D. Ill. 2004), aff'd, 122 F. App'x 511 (Fed. Cir. 2005) (Posner, J.) ("You infringe a claim, not a product . . . as otherwise a patentee could obtain greater protection than its patent conferred, simply by making a product that did not conform to the claim.").

### 1.    Direct Infringement by "Literal Infringement"

To determine literal infringement, you must compare the Accused Products with each Asserted Claim, using my instructions as to the meaning of the terms in the Asserted Claims.

An Accused Product literally infringes an Asserted Claim if it includes each and every element of that claim.  Similarly, use of an Accused Product literally infringes an asserted process claim if the use involves the performance of each and every process step in that claim.  [**SONOS PROPOSED INSTRUCTION:  The performance must be by a single actor that can be held responsible for the performance of all steps of the patent, or by actors that Sonos controls or directs so that all the steps are attributable to a single party.[7]**]

If an Accused Product (or use of an Accused Product) does not satisfy one or more elements recited in an Asserted Claim, the Accused Product (or use of the Accused Product) does not literally infringe that claim. As a reminder, you must determine literal infringement with respect to each Asserted Claim individually.

---

[7]  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2118-19 (2014).  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015).

[DENON PROPOSED INSTRUCTION:  Denon contends that Sonos has infringed claims directed to a device or system that is configured or programmed to perform recited functions.  For these claims, Denon needs to prove only that an accused device possesses the functional capability to perform the recited functions.[8] Infringement of these claims does not require proof that anyone used the accused device or system to actually perform the recited functions,. nor does it require the accused device or system to be set up or activated. Thus, a computing device that is made, sold, offered for sale, or imported into the United States with software pre-installed that enables an end user to utilize the recited claim functions literally infringes as made, sold, offered for sale, or imported.  However, as a reminder, proof of actual use would nevertheless establish infringement.**][[**SONOS PROPOSED INSTRUCTION:  Denon contends that Sonos has infringed claims directed to a method comprising performance of recited functions.  For these claims, Denon needs to prove that Sonos has actually performed the recited functions.  Merely because Sonos provides an accused device possessing the functional capability to perform the recited functions is not enough to establish infringement of these claims.**][[DENON PROPOSED INSTRUCTION]**

## 2.      Direct Infringement Under the "Doctrine of Equivalents"

The other type of direct infringement is called infringement under the doctrine of equivalents.  Under the doctrine of equivalents, an Accused Product infringes a claim if the Accused Product contains features corresponding to each and every element of the claim, where those elements are equivalent to, even though not literally met by, the features of the Accused Product. In other words, it is not required that every claim element be literally met in the Accused Products, as long as the Accused Product includes an equivalent to any claim element that is not literally present.

---

[8] D.I. 406 at 2-3 ("If the Accused Product ships with firmware pre-installed that enables the end user to utilize the functions described in the Asserted Claims, then that is all that is necessary for the sale or importation of the product to constitute infringement."); *see also, e.g.*, *Silicon Graphics, Inc. v. ATI Technologies, Inc.,* 607 F.3d 784, 794 (Fed. Cir. 2010); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204-05 (Fed. Cir. 2010); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1369-70 (Fed. Cir. 2009); *Microprocessor Enhancement Corp. v. Texas Instrum. Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008); *Intel Corp. v. U.S. Int 'l Trade Comm 'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-33-RGA, 2016 WL 70814, at *4 (D. Del. Jan. 6, 2016); *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, No. 11-484-RGA, 2013 WL 3830416, at *1-2 (D. Del. July 23, 2013); *Finjan*, 626 F.3d at 1204-05.

You may find that a feature or step is equivalent to an element or step recited in a claim if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial."

One way to determine if the differences are insubstantial would be to determine whether the accused feature or step (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim.

Another way to determine if the differences are insubstantial is to determine whether the feature or step in the Accused Product is "interchangeable" with the element or step recited in the claim. In order for the feature or step to be considered interchangeable, the feature or step must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient.

Finally, in order to prove infringement by "equivalents," Denon must prove the equivalency of the feature or step to a claim element by a preponderance of the evidence.[9]

In determining infringement by equivalents, you must still use the meanings for the claim terms that I have provided.

---

[9] *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co*., 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co*., 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co*., 339 U.S. 605, 609 (1950) (explaining what constitutes an "equivalent"); *Interactive Pictures Corp. v. Infinite Pictures Inc*., 274 F.3d 1371, 1381-82 (Fed. Cir. 2001); *Johnson & Johnston Assocs. v. R.E. Serv. Co*., 285 F.3d 1046 (Fed. Cir. 2002) (no infringement under the doctrine of equivalents); *Al-Site Corp. v. VSI Int'l, Inc*., 174 F.3d 1308, 1320 (Fed. Cir. 1999) (distinguishing between the doctrine of equivalents and the statutory term "equivalents"); *Hughes Aircraft Co. v. United States*, 140 F.3d 1470, 1475 (Fed. Cir. 1998); *Multiform Desiccants, Inc. v. Medzam, Ltd*., 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos*., 16 F.3d 394, 397 (Fed. Cir. 1994).

### C.    INDIRECT INFRINGEMENT

#### 1.    Inducement

Denon contends that Sonos is liable for indirect infringement by inducing at least one third party to directly infringe the Asserted Patents. As with direct infringement, you must determine whether there has been inducement on a claim-by-claim basis.

Sonos is liable for inducement of a claim if Denon proves by a preponderance of the evidence that:

(1)    a third party engaged in an act or acts that resulted in direct infringement; and

(2)    Sonos acted with a specific intent to induce the direct infringement by the third party.

As to the first prong, to directly infringe a device claim, a third party must either make or use a device that meets all of the limitations of the claim. To directly infringe a process claim, a third party must perform all the steps of the process.  [**DENON PROPOSED INSTRUCTION: A finding of inducement can rest on a single instance of infringement by a third party, which may be established by direct or circumstantial evidence.**]

As to the second prong, Sonos acted with a specific intent to induce the direct infringement if: (a) Sonos took affirmative acts to cause, urge, encourage, or aid the third party's acts and (b) Sonos either (i) knew that the induced acts of the third party would result in direct infringement or (ii) were at least willfully blind to that fact.  Being willfully blind to a fact means that the party subjectively believed there was a high probability that the fact exists and that the party avoided learning this fact.  [**SONOS PROPOSED INSTRUCTION:  This requires Denon to show that Sonos had knowledge that its acts constituted infringement.**]

Intent may be established by direct or circumstantial evidence. [**DENON PROPOSED INSTRUCTION:  Some examples of affirmative acts to cause, urge, encourage, or aid the**

45

third party's infringement include advertising the accused features of the Accused Products, providing instructions for making the Accused Products and for using the accused features of the Accused Products, or a failure to remove infringing the accused functionality features from the Accused Products after learning of a patent]

[SONOS PROPOSED INSTRUCTION:  However, evidence of affirmative actions taken to induce infringement, such as advertising, must be linked to intentionally inducing the allegedly infringing use.[10]  General advertising materials are insufficient to demonstrate more than speculation that the infringing activity has occurred or that defendants intended to induce infringement.[11]]

[DENON PROPOSED INSTRUCTION:  A finding of induced infringement can rest on a single instance of infringement by a third party, which may be established by direct or circumstantial evidence.]

---

[10] *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301,  1322 (Fed. Cir. 2009); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012).
[11] *See, e.g.*, *ACCO Brands,*501 F.3d at 1312-14; *see also E–Pass Techns., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222-23 (Fed. Cir. 2007); *MONEC Holding*, 897 F. Supp. 2d at 234.

## 2.    Indirect Infringement—Contributory Infringement

Denon contends that Sonos is liable for contributory infringement by contributing to the direct infringement of the Asserted Patents by at least one third party. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

Sonos is liable for contributory infringement of a claim if Denon proves by a preponderance of the evidence that:

(1)    Sonos sells, offers to sell, or imports in the United States a component of an infringing product, or component for use in an infringing process;

(2)    the component has no substantial, noninfringing use;

(3)    the component constitutes a material part of the invention;

(4)    Sonos was aware of any of the Asserted Patents and knew that the product or process satisfies a claim of the Asserted Patents; and

(5)    that product or process directly infringes the claim.

A component has no "substantial, noninfringing use" if the component has no meaningful use other than to infringe the claims of a patent.  When applying this standard to a separate and distinct component that is part of a larger product, the analysis must remain focused only on whether the specific component – and not the entire product – is capable of substantial, noninfringing uses.

Unlike induced infringement, the standard for contributory infringement does not require proof of intent to cause infringement, because such intent is presumed when a component is not capable of any substantial, noninfringing use.

A finding of contributory infringement can rest on a single instance of infringement by a third party, which may be established by direct or circumstantial evidence.

[SONOS PROPOSED INSTRUCTION:  Denon has the burden of establishing that the component has no substantial noninfringing use.[12]  A substantial non-infringing use is any use that is not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.[13]  For purposes of contributory infringement, the inquiry focuses on whether the accused products can be used for purposes other than infringement.[14]]

---

[12] *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012).

[13] *In re Bill of Lading*, 681 F.3d at 1337 (quoting *Vita-Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317, 1327-29 (Fed. Cir. 2009)).

[14] *Id.* at 1338 (emphasis in original); *see also Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1339 (Fed. Cir. 2008) (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 104 S.Ct. 774 (1984)).

## D.    WILLFUL INFRINGEMENT

In this case, Denon contends both that Sonos infringed and, further, that Sonos infringed willfully. For any claim that you have determined that Sonos has infringed, you must then determine whether or not this infringement was willful.

Willfulness requires you to determine whether Denon proved that it is more likely than not that the infringement by Sonos was especially worthy of punishment. Sonos acting despite a risk of infringement that was known or was so obvious that it should have been known is sufficient for finding willfulness. Willful infringement also includes egregious behavior, such as where the infringement is wanton, malicious, deliberate, consciously wrongful, [**SONOS PROPOSED INSTRUCTION: flagrant, characteristic of a pirate,**] or done in bad faith.[15]

To determine whether Sonos acted willfully, consider all facts. For example, the following facts, individually or collectively, may suggest that Sonos acted willfully:

(1)    Sonos acted inconsistently with the standards of behavior for its industry;

(2)    Sonos actually copied and/or attempted to copy a product of Denon that is covered by the Asserted Patents; and

(3)    Sonos failed to make a good-faith effort to avoid infringing the Asserted Patents; for example, Sonos failed to attempt to design around the Asserted Patents.

---

[15] 35 U.S.C. § 284; *Halo Electronics, Inc. v. Pulse Electronics, Inc*., 136 S. Ct. 1923, 1930 (2016) (preponderance of the evidence standard for finding willfulness); *WMS Gaming Inc. v. Int'l Game Tech*., 184 F.3d 1339, 1354 (Fed. Cir. 1999) (knowledge of the patent necessary to show willfulness and explaining, in the context of willful infringement, that "the patent law encourages competitors to design or invent around existing patents"); *Read Corp. v. Portec, Inc*., 970 F.2d 816 (Fed. Cir. 1992) (identifying factors that indicate the degree of an infringer's culpability). 35 U.S.C. § 298 ("The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent.").

[DENON PROPOSED INSTRUCTION:   To determine whether Sonos acted willfully, consider all facts.]

[SONOS PROPOSED INSTRUCTION:  Sonos's awareness of an asserted patent, without more, cannot establish willful infringement.[16]  In addition, the failure of Sonos to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of Sonos to present any such evidence to you, is irrelevant to whether Sonos willfully infringed the patent or that Sonos intended to induce infringement of the patent.[17]]

---

[16] *See Vehicle IP, LLC v. AT&T Mobility LLC et al.*, 2016 WL 7647522, at *8 (D. Del. Dec. 30, 2016)
[17] 35 U.S.C. § 289.

## V.      VALIDITY

I will now instruct you on the rules you must follow in deciding whether or not Sonos has

proven that any Asserted Claim of any of the Asserted Patents is invalid. The law presumes the

Asserted Claims are valid.[18]  For this reason Sonos has the burden of proving invalidity by clear

and convincing evidence.[19]

Sonos contends that the Asserted Claims of the Asserted Patents are invalid as:

1)      they are not new;

2)      they would have been obvious to a person skilled in the technology described in

the Asserted Patents; and

3)      the asserted claims of the '294 patent fail to make the scope of the invention

reasonably certain.

---

[18] 35 U.S.C. § 282 (patents presumed valid).

[19] *Microsoft Corp. v. i4i Limited Partnerhsip*, 131 S.Ct. 2238 (2011).  Invalidity may be asserted
for failure to comply with any requirement of 35 U.S.C. § 101, 102, 103, 112, or 251, as a
defense to alleged infringement. *Schumer v. Lab. Computer Sys., Inc*., 308 F.3d 1304, 1315 (Fed.
Cir. 2002) (to overcome presumption of validity, challenging party must present clear and
convincing evidence of invalidity); *Buildex, Inc. v. Kason Indus., Inc*., 849 F.2d 1461, 1463 (Fed.
Cir. 1988) (clear and convincing evidence is that "which produces in the mind of the trier of fact
an abiding conviction that the truth of [the] factual contentions are highly probable") (alteration
in original) (citation and internal quotation marks omitted); *Hybritech Inc. v. Monoclonal
Antibodies, Inc*., 802 F.2d 1367, 1375 (Fed. Cir. 1986) ("Notwithstanding that the introduction of
prior art not before the examiner may facilitate the challenger's meeting the burden of proof on
invalidity, the presumption remains intact and on the challenger throughout the litigation, and the
clear and convincing standard does not change.").

## A.     PRIOR ART

Under the patent laws a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before is referred to as the "prior art."

Prior art may include items that were publicly known, previously invented, or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

Generally, to be prior art, the item or reference must have been made, known, used, published, or patented either before the claimed invention was made or more than one year before the filing date of the patent application of the asserted patent. However, prior art does not include a publication that describes the inventor's own work and was published less than one year before the date of invention.

[**SONOS PROPOSED INSTRUCTION:  For a prior invention by another to be prior art to the claimed invention, the prior invention must have been either (i) reduced to practice before the claimed invention was conceived or (ii) conceived of before the claimed invention was conceived and the conception was followed by a diligent reduction to practice.**]

Generally, references that are dated after the priority date of a Denon Patent do not qualify as prior art to the Denon Patent.  [**SONOS PROPOSED INSTRUCTION:  However, a reference that evidences a prior invention by another that is dated after the priority date of an Asserted Patent can qualify as prior art to the Asserted Patent.**]

The parties agree that the priority date for the '850 Patent is November 10, 2003.

The parties disagree on the priority date of the '294 Patent.  Denon contends that the priority date is between July and September 2005 [**DENON PROPOSED INSTRUCTION because the invention of the '294 Patent was conceived in that time period and the inventors**

**used reasonable diligence to reduce the invention to practice by October 17, 2006.  In a moment, I will explain the terms "conception" and "reduction to practice" in more detail.**]

Sonos contends that the priority date is October 16, 2007.

I will now explain how you are to determine the priority date for the '294 Patent.

### 1.     Priority Date

The "priority date" is the date that a patented technology was invented.  The date of invention of a patent in suit is presumed to be the filing date of the patent application unless an earlier date of invention is proved.[20] As I just discussed, Denon contends that the Asserted Claims of the '294 Patent were invented sometime between July and September 2005, before the patent was filed, and is therefore entitled to claim priority to the earlier date of invention.  Sonos disagrees and contends that the priority date of the '294 Patent is October 16, 2007, its filing date.  [**DENON PROPOSED INSTRUCTION:   Denon ultimately bears the burden of proving by a preponderance of the evidence that the Asserted Claims of the '294 Patent are entitled to the earlier filing date. However, although Denon has the burden to produce evidence of an earlier priority date, Sonos still has the burden to prove by clear and convincing evidence that the claims of the '294 Patent are invalid.[21]**]

To establish an earlier priority date of an invention, Denon must show by a preponderance of the evidence that the invention described in the '294 Patent was either (1) reduced to practice before the filing date of the patent, or (2) conceived of before the effective filing date and the conception was followed by a diligent reduction to practice.[22]

---

[20] *Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986).
[21] *See Stamps.com Inc. v. Endicia, Inc.*, 437 Fed. Appx. 897, 907–08 (Fed. Cir. 2011)
[22] *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001).

[**DENON PROPOSED INSTRUCTION**]

"Conception" means that inventor formed in his mind a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice.[23]  The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

The inventor must show diligence throughout the entire critical period, which runs from a date just before the invention date to the inventor's filing date.[24]  Denon does not have to prove the that the inventor continuously exercised reasonable diligence throughout the critical period; it must show there was reasonably continuous diligence. Under this standard, an inventor is not required to work on reducing his invention to practice every day during the critical period.  Periods of inactivity within the critical period do not automatically negate a patent owner's claim of reasonable diligence.  Rather, you must find that, in light of the evidence as a whole, the invention was not abandoned or unreasonably delayed.[25]

---

[23] *In re Steed*, 802 F.3d 1311, 1320 (Fed. Cir. 2015).
[24] *See Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1312–13 (Fed. Cir. 2011); 35 U.S.C. § 102(g) (2006).
[25] *Perfect Surgical Techniques, Inc. v. Olympus Am., Inc.*, 841 F.3d 1004, 1009 (Fed. Cir. 2016).

[**SONOS PROPOSED INSTRUCTION**]

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work.  Conception must include every feature or limitation of the claimed invention.  Conception of an invention is complete only when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the entire invention to practice without undue research or experimentation.  There must also be documentary evidence beyond the inventor's own testimony that independently corroborates the date on which the inventor claims to have conceived of the invention.  Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

If an inventor attempts to rely on an earlier date of conception, it must show that it exercised reasonable diligence throughout the entire period between the date of conception and the date the invention was reduced to practice. This requires the inventor to show that it took specific and affirmative acts during this entire period that were directly related to the reduction to practice of the invention at issue.  The inventor must provide an acceptable excuse for any periods of inactivity. Voluntarily setting aside development of the alleged invention, or taking time to commercially exploit an invention, or a separate product or invention, do not constitute acceptable excuses.[26]

---

[26] *Stern v. Trustees of Columbia Univ. in the City of New York*, 434 F.3d 1375, 1378 (Fed. Cir. 2006); *Singh v. Brake,* 222 F.3d 1362, 1367 (Fed. Cir. 2000); MPEP § 2138.06 ("Reasonable Diligence").

A "reduction to practice" of an invention can take one of two different forms.  There may be an "actual" reduction to practice of the invention where (i) there was a constructed, physical embodiment of the invention that included all of the precise elements of the claims at issue or a process was performed that precisely met all of the elements of the claims at issue and (ii) the constructed embodiment or performed process actually worked for its intended purpose.[27] Alternatively, there may be a "constructive" reduction to practice of the invention that occurs when a patent application is filed that adequately supports the invention.[28]

---

[27] *Alexsam, Inc. v. Gap, Inc.*, 621 F. App'x 983, 988 (Fed. Cir. 2015); *Eaton v. Evans,* 204 F.3d 1094, 1097 (Fed. Cir. 2000); *L-3 Commc'ns Corp. v. Sony Corp.*, No. 10-734-RGA, 2013 WL 5942521, at *1 (D. Del. Oct. 16, 2013); *Am. Standard Inc. v. Pfizer Inc.*, 722 F. Supp. 86, 120 (D. Del. 1989).

[28] *Alexsam, Inc. v. Gap, Inc.*, 621 F. App'x 983, 988 (Fed. Cir. 2015); *Cooper v. Goldfarb,* 154 F.3d 1321, 1327 (Fed. Cir. 1998); *L-3 Commc'ns Corp. v. Sony Corp.*, No. 10-734-RGA, 2013 WL 5942521, at *1 (D. Del. Oct. 16, 2013); *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, No. 05-608, 2007 WL 2910086, at *4 (D. Del. Oct. 5, 2007).

## B.    ANTICIPATION

### [DENON PROPOSED INSTRUCTION]

For the claim to be invalid because it is not new, Sonos must show by clear and convincing evidence that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent. We call these things "anticipating prior art." To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

In determining whether every one of the elements of the claimed invention is found in a prior publication or patent, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular reference.[29]

---

[29] 35 U.S.C. § 102(a)-(g); *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *In re Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377-80 (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330-31 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 328-32 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc.*, 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986*); D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

[**SONOS PROPOSED INSTRUCTION**]

Sonos can prove that a claim is invalid invalid because it is not new in either of two ways.  First, Sonos can prove this if it can show by clear and convincing evidence that all of the requirements of that claim were present in a single previous device, system, or method that was made, known of, used, or described in a single previous printed publication or patent.  Second, Sonos can show this if it can prove by clear and convincing evidence that all the requirement of the claim were made by someone else in the United States, who did not abandon, suppress, or conceal it, before the claim was made by the patent's inventor.

We call these things "anticipating prior art." To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

In determining whether a single item of prior art anticipates a patent claim, you should consider not only what is expressly disclosed in the particular prior art reference but also what is inherently present in that prior art or inherently results from its practice. Prior art inherently anticipates a patent claim if the missing element or feature would necessarily result from what the single item of prior art teaches to persons of ordinary skill in the art. A party claiming inherent anticipation must prove by clear and convincing evidence that the allegedly inherent element is necessarily present. Evidence outside of the prior art reference itself may be used to show that elements that are not expressly disclosed in the reference are inherent in it.[30]

---

[30] Jury Instructions, ERFINDERGEMEINSCHAFT UROPEP GbR v. ELI LILLY AND COMPANY, 2:15-cv-1202 at D.I. 333 (E.D. Tex.).

In determining whether every one of the elements of the claimed invention is found in a particular prior art reference, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular reference.[31]

---

[31] 35 U.S.C. § 102(a)-(g); *Flex-Rest, LLC v. Steelcase, Inc*., 455 F.3d 1351, 1358-60 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P*., 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); *In re Klopfenstein*, 380 F.3d 1345, 1348-51 (Fed. Cir. 2004); *Toro Co. v. Deere & Co*., 355 F.3d 1313, 1320-21 (Fed. Cir. 2004); *Schering Corp. v. Geneva Pharms., Inc*., 339 F.3d 1373, 1377-80 (Fed. Cir. 2003); *Apotex U.S.A., Inc. v. Merck & Co*., 254 F.3d 1031, 1035 (Fed. Cir. 2001); *Mycogen Plant Sci., Inc. v. Monsanto Co*., 243 F.3d 1316, 1330-31 (Fed. Cir. 2001); *Ecolochem, Inc. v. S. Cal. Edison Co*., 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Singh v. Brake*, 222 F.3d 1362, 1366-70 (Fed. Cir. 2000); *Pannu v. Iolab Corp*., 155 F.3d 1344, 1349 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp*., 110 F.3d 1573, 1576-78 (Fed. Cir. 1997); *Lamb-Weston, Inc. v. McCain Foods, Ltd*., 78 F.3d 540, 545 (Fed. Cir. 1996); *In re Bartfeld*, 925 F.2d 1450, 1452-53 (Fed. Cir. 1991); *Ralston Purina Co. v. Far-Mar-Co, Inc*., 772 F.2d 1570, 1574 (Fed. Cir. 1985); *Am. Stock Exch., LLC v. Mopex, Inc*., 250 F. Supp. 2d 323, 328-32 (S.D.N.Y. 2003); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981); *Pfaff v. Wells Elecs. Inc*., 525 U.S. 55 (1998); *Helifix Ltd. v. Blok-Lok, Ltd*., 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Abbott Labs. v. Geneva Pharms., Inc*., 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *J.A. LaPorte, Inc. v. Norfolk Dredging Co*., 787 F.2d 1577, 1581 (Fed. Cir. 1986); *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir. 1986*); D.L. Auld Co. v. Chroma Graphics Corp*., 714 F.2d 1144, 1147-50 (Fed. Cir. 1983).

## C.    OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Sonos may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious, at the time that the invention was made, to persons having ordinary skill in the art in the field of networking and consumer audio systems.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of networking and consumer audio systems that someone would have had at the time that the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

**[SONOS PROPOSED INSTRUCTION:  The term "person of ordinary skill in the art" is a term used frequently in patent law, and it has an important role in deciding whether an invention would have been obvious at the time it was invented. So, what does it mean?**

**A person of ordinary skill in the art is a person of average education and training in a particular field, but who is aware of the relevant prior art in that field. The level of ordinary skill in the art often depends on the nature of the field of the invention. So, for example, if the invention is a way to generate additional energy in a nuclear power plant,**

**the level of ordinary skill in the art is likely to be significantly higher than if the invention is a new way to fold cardboard boxes to make them stronger.[32]**]

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of networking and consumer audio systems to combine the known elements in a way the claimed invention does.

Unlike anticipation, obviousness may be proved by considering more than one item of prior art and considering these multiple prior art references in combination. For this purpose, you may consider whether there is anything that would have prompted a person of ordinary skill in the art to combine the elements or concepts in the prior art in the same way the invention does. But you also need to keep in mind that a patent claim that consists of several elements is not rendered obvious merely because each of the separate elements was known in the prior art. For example, you could say that a piano is really just a combination of wood, ivory, metal, and wires, but that does not mean that inventing the piano would be obvious if you just started with a pile of wood, some wire, some pieces of ivory, and a few chunks of metal.[33]

If Sonos presents proof that a claim is obvious in light of the prior art, Denon may present other evidence that the invention was not obvious.[34]

---

[32] Jury Instructions, ERFINDERGEMEINSCHAFT UROPEP GbR v. ELI LILLY AND COMPANY, 2:15-cv-1202 at D.I. 333 (E.D. Tex.).
[33] Jury Instructions, ERFINDERGEMEINSCHAFT UROPEP GbR v. ELI LILLY AND COMPANY, 2:15-cv-1202 at D.I. 333 (E.D. Tex.).
[34] *WMS Gaming, Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1359 (Fed. Cir. 1999).

[**SONOS PROPOSED INSTRUCTION:  The following facts, individually or collectively, may suggest that the claimed invention would not have been obvious:**]

[**DENON PROPOSED INSTRUCTION:  When deciding whether a claimed invention would have been obvious or not, you may take into account various factors.  For example, the following facts, individually or collectively, may suggest that the claimed invention would not have been obvious:**](1) the claimed invention was more than the predictable result of using prior art elements according to their known function(s);

(2) the claimed invention provides more than an obvious solution to a known problem in the relevant field;

(3) the prior art fails to teach or suggest the desirability of combining elements claimed in the invention;

(4) the prior art teaches away from combining elements in the claimed invention; and

(5) there was a lack of a design need or market pressure to solve the problem addressed by the claimed invention.

To find that the prior art rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success.

In determining whether the claimed invention was obvious, consider each claim separately, but for each claim, consider the claim as a whole.

Do not use hindsight in your analysis.  Rather, consider only what was known at the time of the invention.

### 1.    Objective Evidence

In making your assessment of whether a claimed invention was obvious or not, you should take into account any objective evidence  that may shed light on the obviousness or not of the claimed invention. In patent law, we typically refer to this type of evidence as "secondary considerations" of non-obviousness.

For example, the following facts, individually or collectively, may suggest that the claimed invention would not have been obvious:

1)    The invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

2)    The invention satisfied a long-felt need;

3)    Others failed to make the invention;

4)    Others copied the invention;

5)    The invention achieved unexpected results;

6)    Others in the relevant industry, especially competitors, praised the invention;

7)    Others in the relevant industry, especially competitors, expressed doubt or skepticism that the invention would work for its intended purpose;

8)    Others in the relevant industry, especially competitors, expressed surprise or disbelief regarding the invention;

9)    Others sought or obtained rights, such as licenses, to the patent from the patent holder; and

10)    The inventor(s) proceeded contrary to accepted wisdom in the relevant industry.

**[SONOS PROPOSED INSTRUCTION:  If Denon presents this kind of evidence, it also must prove that there is a link between the claimed features of the invention and the**

4

evidence it has offered to show non-obviousness.[35]  For example, to the extent Denon claims

"commercial success" or "praise " of any product suggests non-obviousness, Denon must

establish a link between any such commercial success or praise and the invention.[36]

However, evidence of secondary considerations that related to features already found in the

prior art is not relevant to the question of obviousness.[37]  For example, if "commercial

success" is due to a feature already found in the prior art, then it cannot be used to show

that the invention was not obvious.]

### 2.    Level of Ordinary Skill

Sonos and Denon agree that a person of ordinary skill is someone with a Bachelor's

degree in Electrical Engineering or Computer Science with at least two years of professional

experience in the field of networking and consumer audio systems, or equivalent.

---

[35] *WMS Gaming, Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1359 (Fed. Cir. 1999).

[36] *See Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1363 (Fed. Cir. 2012).

[37] *See, e.g., Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1345 (Fed. Cir. 2007) (finding that where factors that led to commercial success of Dippin' Dots were present in the prior art, they could not overcome obviousness); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1365 (Fed. Cir. 2007) (recognition of patent inventors as "trail-blazers" — even by accused infringers — must be based upon the inventive contribution made in order to establish a nexus); *Ormco Corp.*, 463 F.3d at 1312 ("So too if the feature that creates the commercial success was known in the prior art, the success is not pertinent."); *J.T. Eaton & Co., Inc. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) (citing *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983)) ("[T]he asserted commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art."); *Cephalon Inc. v. Mylan Pharm. Inc.*, 962 F. Supp. 2d 688, 720-22 (D. Del. 2013) (Robinson, J.) (evidence of praise, failure of others, and commercial success must be sufficiently related to novel aspects of patent).

### 3.    Scope and Content of the Prior Art

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Where the party challenging the validity of the patent is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it was different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.[38]

---

[38] 35 U.S.C. § 103. The four-factor test, including articulation of the objective factors, is found in *Graham v. John Deere Co*., 383 U.S. 1, 17-18 (1966); see also *Ruiz v. A.B. Chance Co*., 234 F.3d 654, 662-63 (Fed. Cir. 2000). The test was reaffirmed in *KSR International Co. v. Teleflex Inc*., 550 U.S. 398, 407 (2007) ("While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls."). See also *Cordis Corp. v. Medtronic Ave., Inc*., 511 F.3d 1157, 1172 (Fed. Cir. 2008).

In cases where the invalidity defense is based on a combination of prior art, the proper inquiry is a flexible analysis considering whether, among other factors, the prior art teaches, suggests, or motivates the claimed invention.  *KSR*, 550 U.S. at 419-20; *Esai Co. v. Dr. Reddy's Labs. Ltd*., 533 F.3d 1353, 1356-57 (Fed. Cir. 2008); *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd*., 492 F.3d 1350, 1356-57 (Fed. Cir. 2007); *Hybritech Inc.*, 802 F.2d at 1380-81.

For recent authority that invalidity must be shown by clear and convincing evidence, but that this burden can be carried more easily when the challenger is relying on prior art materially different from the art considered during examination, see *Microsoft Corp. v. i4i Limited Partnerhsip*, 131 S.Ct. 2238 (2011). Obviousness should be evaluated on a claim-by-claim basis. *Aventis Pharma Deutschland GmbH v. Lupin, Ltd*., 499 F.3d 1293, 1303 (Fed. Cir. 2007).
For factors to consider in determining the level of ordinary skill, see, e.g., *Daiichi Sankyo Co. v. Apotex, Inc*., 501 F.3d 1254, 1256 (Fed. Cir. 2007); *Ruiz*, 234 F.3d at 666-67. For authority on the standards for determining the scope and content of prior art, see, e.g., *KSR*, 550 U.S. at 420;

### D.     DEFINITENESS REQUIREMENT

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the art reading them is able to determine what the claims cover and what they do not cover with reasonable certainty. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art, and the description of the invention contained in the patent. A patent claim, when read along with the rest of the patent, must inform those skilled in the art of what the patent claims cover with reasonable certainty.

Sonos contends that claim(s) 3, 4, 7, 9-12, 16, 20, and 26 of the '294 Patent are indefinite. In order to decide whether or not any of claim(s) 3, 4, 7, 9-12, 16, 20, and 26 of the '294 Patent are indefinite, you must consider whether or not the '294 Patent provides reasonably certain guidance about what is included within the scope of the claims.  You must also consider whether or not a person of ordinary skill in the art reading the patent would understand what is included within the claims.

If you find that Sonos has proved by clear and convincing evidence that any of claim(s) 3, 4, 7, 9-12, 16, 20, and 26 of the '294 Patent are indefinite because a person of ordinary skill in the art would not understand what is and what is not covered by the claims, then you must find

---

*Circuit Check, Inc. v. QXQ Inc.*, 795 F.3d 1331, 1482 (Fed. Cir. 2015) (stating that when considering whether prior art is analogous, "the question is whether an inventor would look to this particular art to solve the particular problem at hand"); *In re Icon Health & Fitness, Inc.*, 496 F.3d 1374, 1379-80 (Fed. Cir. 2007); *Princeton Biochems., Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1339 (Fed. Cir. 2005).

that those claims are invalid.[39]

---

[39] *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014); *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001); *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1378-80 (Fed. Cir. 2000); *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1378-82 (Fed. Cir. 1999); *Personalized Media Communications, L.L.C. v. Int'l Trade Comm'n*, 161 F.3d 696, 700 (n.5), 705 (Fed. Cir. 1998); *In re Dossel*, 115 F.3d 942 (Fed. Cir. 1997); *In re Donaldson Co.*, 16 F.3d 1189 (Fed. Cir. 1994); *N. Am. Vaccine, Inc. v. Am. Cynamid Co.*, 7 F.3d 1571, 1579-80 (Fed. Cir. 1993).

## VI.    DAMAGES

If you find that Sonos infringed any valid claim of the Asserted Patents, you must then consider what amount of damages to award to Denon. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Sonos has not infringed any valid claim of the patent, then Denon is not entitled to any damages.

The damages you award must be adequate to compensate Denon for the infringement. Your damages award should put Denon in approximately the same financial position that it would have been in had the infringement not occurred.

Denon has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Denon establishes that it more likely than not suffered. While Denon is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.   You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

Denon is entitled to no less than a reasonable royalty for each infringing act if you find that Sonos infringed any valid Denon Patent.  [**DENON PROPOSED INSTRUCTION:  This means each infringing use, sale, offer for sale, or import into the United States.**]  A reasonable royalty is defined as the money amount Denon and Sonos would have agreed upon as a fee for use of the invention at the time prior to when infringement began. [**DENON PROPOSED INSTRUCTION:  If the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against Sonos. Any such adverse consequences must rest on Sonos when the inability to ascertain damages is due to the Sonos's own failure to keep accurate records.**]

## A.     REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of Denon and Sonos would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed Denon's Asserted Patents were valid and infringed and that both parties were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

If you find that Sonos infringed multiple of the Asserted Patents, even by a single infringing act, you may award separate royalties to Denon for each patent that was infringed. You also may consider the number of patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.[40]

---

[40] *Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292 (Fed. Cir. 2011) (25% "rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1340 (Fed. Cir. 2009) cert. denied, 130 S. Ct. 3324 (2010) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-Mart Stores, Inc*., 355

## B.    REASONABLE ROYALTY—RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)    The rates paid by Sonos for the use of other patents comparable to Denon's Asserted Patents.

(2)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(3)    Denon's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(4)    The commercial relationship between Denon and Sonos, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

---

F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984); *Lucent Techs., Inc.*, 580 F.3d at 1324-25; *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898-900 (Fed. Cir. 1986); *Studiengesellschaft Kohle, mbH v. Dart Indus., Inc.*, 862 F.2d 1564, 1570-72 (Fed. Cir. 1988); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir 2004); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561 n.8 (Fed. Cir. 1983); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003), *reversed on other ground*, *Merck KGaA v. Integra Lifesciences I., Ltd.*, 545 U.S. 193 (2005); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007).

(5)     The effect of selling the infringing Sonos products in promoting sales of other Sonos products, the existing value of the invention to Denon as a generator of sales of its nonpatented items, and the extent of such derivative or convoyed sales.

(6)     The duration of Denon's Patents and the term of the license.

(7)     The established profitability of the products made under Denon's Asserted Patents, their commercial success, and their current popularity.

(8)     The extent to which Sonos has made use of Denon's inventions and any evidence probative of the value of that use.

(9)     The utility and advantages of the patented products over the old modes or devices, if any, that had been used for achieving similar results.

(10)     The nature of Denon's patented inventions, the character of the commercial embodiments of them as owned and produced by Denon, and the benefits to those who have used the inventions.

(11)     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of Denon's inventions or analogous inventions.

(12)     The portion of the realizable profits that should be credited to Denon's inventions as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by Sonos.

(13)     The opinion and testimony of qualified experts.

(14)     The amount that a licensor (such as Denon) and a licensee (such as Sonos) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a

business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

(15)     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

These factors are not mandatory. No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.[41]

---

[41] *See, e.g.*, *Energy Transp. Group, Inc. v. William Demant Holding A/S/*, 697 F.3d 1342, 1357 (Fed. Cir. 2012) ("[T]his court does not endorse Georgia-Pacific as setting forth a test for royalty calculations, but only as a list of admissible factors informing a reliable economic analysis."). But if they are used, the jury should be instructed only on the factors that are relevant to the evidence before the jury. *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014) (stating that "the district court erred by instructing the jury on multiple Georgia-Pacific factors that are not relevant, or are misleading, on the record before it"); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) (25% "rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Lucent Techs., Inc.*, 580 F.3d at 1340, cert. denied, 130 S. Ct. 3324 (2010) (vacating and rewarding jury award as excessive); *Golight, Inc.*, 355 F.3d at 1338; *Maxwell*, 86 F.3d at 1108-10; *Mahurkar*, 79 F.3d at 1579-81; *Rite-Hite Corp.*, 56 F.3d at 1554 (en banc); *Georgia-Pacific Corp.*, 318 F. Supp. at 1120.

### C.      DATE OF COMMENCEMENT OF DAMAGES—PRODUCTS

In determining the amount of damages, you must determine when the damages began.

For the Asserted Patents, damages begin on the date that Sonos has both infringed and been notified of the alleged infringement of the Asserted Patents. I will now explain how to determine the date when Sonos was notified of the alleged infringement.

Notification of infringement can occur in any of two ways. First, notification can occur by what is called patent marking. If you find that Denon sells a product that includes the claimed invention, you must determine whether Denon has "marked" that product with the patent number or "virtually marked" that product with the patent number through a free-to-access website. Denon has the burden of establishing that it substantially complied with the marking requirement. This means Denon must show that it marked or virtually marked substantially all of the products it made, offered for sale, or sold under the Asserted Patents. Sonos is considered to have been notified of the alleged infringement of the Asserted Patents on the date that such marking began.

Second, notification of infringement can occur by what is called actual notice. Actual notice is the date when Sonos received actual notice of the Asserted Patents and the specific products alleged to infringe. The filing of a complaint asserting a patent qualifies as actual notice, so the damages period begins no later than the date the complaint was filed.

If you find that Denon sells a product covered by the Asserted Patents and marks or virtually marks the product with the patent numbers, damages begin without the requirement for actual notice. If you find that the Asserted Patents were granted before the infringing activity began, damages should be calculated as of the date you determine that the infringement began. If

you find that the Asserted Patents were granted after the infringing activity began, damages should

be calculated as of the patent issue date.[42]

---

[42] 35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell*, 86 F.3d at 1108-09; *Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987). Notice through marking is constructive notice. *See Maxwell*, 86 F.3d at 1111-12 (holding that when 95% of patented product offered for sale was marked by licensee retailer with "patent pending," even after the patent had been granted and remaining 5% of product remained unmarked, constructive notice had been made under 35 U.S.C. § 287(a) where patentee demonstrated efforts to correct licensee's mistakes). In determining when damages begin with regard to method claims, there is no notice requirement. 35 U.S.C. § 287(c)(2)(F); see *Am. Med. Sys.*, 6 F.3d at 1538 ("The law is clear that the notice provisions of section 287 do not apply where the patent is directed to a process or method."). Accordingly, the calculation of damages for infringement of method claims should begin as of the date the patent issued or the date the infringement began, whichever was first. *Crystal Semiconductor*, 246 F.3d at 1353.

## VII.   DELIBERATION AND VERDICT

### A.   INTRODUCTION

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Upon retiring to the jury room, the first thing you should do is select a foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in court.

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the foreperson, or if he or she is unwilling to do so, by some other juror. The writing should be given to a courtroom representative, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

Once you start deliberating, do not talk to the jury officer, to me, or to anyone else except each other about the case.

**B.     UNANIMOUS VERDICT**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A verdict form has been prepared for you. The verdict form asks you a series of questions about the parties' claims. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless you are directed otherwise in the verdict form, you must answer all of the questions posed, and you all must agree on each answer.

### C.    DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**D.        COURT HAS NO OPINION**

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

Finally, if I have read any of these instructions inconsistently with the written text, you are to rely on the written instructions in your deliberations.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror.

You are impartial judges of the facts.

# APPENDIX

## VIII.   GLOSSARY

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given.  The definitions in the instructions must be followed and must control your deliberations.

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment**: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation**: A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

**Assignment**: A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not

21

stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception**: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment**: A product or method that contains the claimed invention.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**: Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the

term of the patent. Infringement may be direct, by inducement, or contributory. Direct

infringement is making, using, or selling the patented invention without permission. Inducing

infringement is intentionally causing another to directly infringe a patent. Contributory

infringement is offering to sell or selling an item that is a significant part of the invention, so that

the buyer directly infringes the patent. To be a contributory infringer, one must know that the

part being offered or sold is designed specifically for infringing the patented invention and is not

a common object suitable for noninfringing uses.

**License:**  Permission to make, use, or sell a patented invention, which may be granted by

a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other

compensation**.**

**Limitation**: A required part of an invention set forth in a patent claim. A limitation is a

requirement of the invention. The word "limitation" is often used interchangeably with the word

"requirement."  The phrase "claim limitation" is often used interchangeably with the phrase

"claim element."

**Nonobviousness**: One of the requirements for securing a patent. To be valid, the subject

matter of the invention must not have been obvious to a person of ordinary skill in the field at the

time of the earlier of the filing date of the patent application or the date of invention.

**Office Action**: A written communication from the Examiner to the patent applicant in the

course of the application examination process.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed (or 17 years from the date the patent issued). When the patent expires, the right to make, use, or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent Application:**  The initial papers filed in the United States Patent and Trademark Office (Patent Office or PTO) by an applicant. These typically include a specification, drawings and the oath (Declaration) of applicant.

**Patent Examiners:**  Personnel employed by the Patent Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and the disclosure adequately describes the Invention.

**United States Patent and Trademark Office (USPTO or PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art**: Previously known subject matter in the field of a claimed invention for which a patent is being sought. It includes issued patents, publications, and knowledge deemed to be publicly available, such as trade skills, trade practices, and the like.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

[**DENON PROPOSED INSTRUCTION: Reduction to Practice: The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.**]

[**SONOS PROPOSED INSTRUCTION: Reduction to Practice: A "reduction to practice" of an invention can take one of two different forms: (1) an "actual" reduction to practice of the invention where (a) there was a constructed, physical embodiment of the invention that included all of the precise elements of the claims at issue or a process was performed that precisely met all of the elements of the claims at issue and (b) the constructed embodiment or performed process actually worked for its intended purpose;**

**or (2) a "constructive" reduction to practice of the invention that occurs when a patent application is filed that adequately supports the invention**]

**Reference**:  Any item of prior art (publication or patent) used to determine patentability.

**Requirement**: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty**: A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification**: The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.

**[SONOS PROPOSED INSTRUCTION:  Written Description:  That part of the patent specification that explains how the invention works and usually includes a drawing.]**